## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 7 |
| THOMAS RICHARD PICKARD, | ) | |
| LISA MARIE PICKARD, | ) | Bankruptcy No. 11-01819 |
| | ) | |
| Debtors. | ) | |

## ORDER RE: OBJECTIONS TO EXEMPTIONS (Docs. 12, 14, 17, 20); OBJECTION TO PROOF OF CLAIM NO. 6 (Doc. 37)

This matter came before the Court for trial on Objections to exemptions and Debtors' Objection to claim number 6.   Trial was held on March 28, 2012 in Des Moines, Iowa.   The following parties appeared:   Larry Eide as Chapter 7 Trustee; Attorney Robert Gainer for Debtors Thomas and Lisa Pickard; Attorney Michael Thibodeau for Iowa State Bank; Attorney Timothy Van Vliet for United Fire Group. After the presentation of evidence and argument, the Court took the matter under advisement.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## STATEMENT OF THE CASE

Trustee, Iowa State Bank, and United Fire Group filed objections to Debtors' claimed homestead exemption.   In addition, Trustee objects to Debtors' claimed exemption of (1) a skid loader and (2) a shop building on the homestead real estate. For the reasons that follow, the Court finds Iowa State Bank's lien attaches to

Debtors' Cambridge homestead based on the theories of constructive trust and

equitable liens.   The homestead is otherwise exempt.   The shop building is not

exempt as appurtenant to the homestead.   The skid loader is not exempt as a tool of

Debtors' trade.

## FINDINGS OF FACT

Before October 31, 2008, Debtors lived in a house in Ankeny, Iowa which

they purchased in 1996.   While Debtors were living at the Ankeny home, they

granted Iowa State Bank a mortgage on the property to secure a debt owed by their

business, TLP Properties, LC.   The debt was later assumed by TLP Construction.

Thomas Pickard was the owner and president of both TLP entities.

Debtors purchased property in Cambridge, Iowa in August 2007.   They

borrowed the $151,000 they used to purchase the Cambridge property from Iowa

State Bank.   They later built a new home on the Cambridge property.   The property

encompasses 34.75 acres, outside the city limits.

Debtors sold the Ankeny house ( "Lot 2") in October 2008 for $455,000.

Debtors did not pay off the lien held by Iowa State Bank in the amount of

approximately $134,400.   Debtors later sold a second parcel ("Lot 1") adjacent to

the Ankeny homestead property for $135,000, also without paying off the Iowa State

Bank debt on the Ankeny property.   The Bank's Mortgage had attached only to Lot

2

2—the parcel containing their home.   Compare Bank Ex. 1 (mortgage) with

Debtors Ex. P. (assessor record of adjacent lot).   Debtors had used both lots in

Ankeny as their homestead which was outside the city limits.

Debtors had been in contact with Iowa State Bank ("the Bank") near the time

they were selling the Ankeny property.   The Bank prepared a lien release as part of

the discussions about the sale.   The lien release was never filed.   The Bank claims

it never heard back from Debtors about whether the sale occurred and assumed the

deal fell through.   Debtors claim the Bank released or waived its lien.   The Bank

claims this never happened.   It points out the original release was never filed and

Debtors continued to make payments on the debt to the Bank for some time after

Debtors claim the Bank had released its lien.   Whether the Bank's lien attaches to

Debtor's Cambridge property is a focal point of the dispute before this Court.

United Land Title Company served as the settlement agent for the closing on

the Ankeny property.   United Fire Group has appeared in the case asserting an

interest in protecting United Land Title Company from liability.

Debtors built a shop building on the Cambridge property soon after

purchasing the property.   Mr. Pickard used the building for his concrete

construction business.   The shop has approximately 5300 square feet, a bedroom

and bath, but no hot water.   Mr. Pickard began residing there immediately after the

sale of the Ankeny house in October 2008.   He resided there in order to secure the

property and to work on construction of the new family home in the evening.   The

rest of the family stayed at a relative's house nearby and finally moved to the

Cambridge home in December 2009.

Debtors assert they invested the full proceeds of the sale of both parcels of

Ankeny property into the Cambridge property.   Debtors received net proceeds from

the sale of the Ankeny home of $323,996.10, which includes a $10,000 deposit.

See Bank Ex. 8.   Nothing in the record indicates Debtors received anything less

than the full $135,000 purchase price for the adjacent lot.   The total net proceeds of

the two Ankeny properties was $458,996.10.   Mr. Pickard testified he invested

approximately $460,000 in the Cambridge home, including $151,000 for the land

they borrowed from the Bank.   He spent an additional $40,000 constructing the

outbuilding.   Thus, he believes the total cost for the Cambridge property was

$500,000.   Debtors used part of the proceeds of the sale of the Ankeny home to pay

off the $151,000 mortgage held by the Bank on the Cambridge property.   They now

claim the property as a fully exempt homestead.

The parties dispute the value of the Cambridge property.   The dispute on

value dealt with whether the Bank's debt could attach as an existing obligation as the

property became Debtor's homestead.   Many of the witnesses testified about the

4

condition of the property.    Debtors were required to get a variance to build a home

on the property.    The total acreage is less than the minimum of 35 acres required by

local law for a permit to build a home.    The property abuts Interstate 35.    The home

has a very long and steep gravel and dirt driveway.    Of the total farm acreage, only

about 26 or 27 acres are farmable.    There are deep waterways through the property

and drainage tile damage which impedes planting and harvesting.    Because the land

abuts Interstate 35 and has other access issues, equipment needed to farm the land

must travel several miles out of the way to reach the farmable property.    In addition,

some finish work must be completed in the house itself, as well as landscaping and

sidewalks, and siding on the outbuilding.

Trustee presented two appraisals by Edgar Christian of Rally Appraisal, LLC,

a certified residential appraiser.    Mr. Christian appraised the property in two

parcels, "as is," retrospectively to the date Debtors filed their Bankruptcy petition,

August 3, 2011.    In Trustee's Exhibit 55A, Mr. Christian values Debtors' home, the

outbuilding and surrounding five acres at $425,000.    The outbuilding itself is

valued at $30,000.    Ex. 55A, p.5.    In Exhibit 55B, he values the remaining 29.75

acres of farmland at $185,000.    A colleague, Clint Miller, a certified general

appraiser, worked with Mr. Christian on the appraisal of the farm land.    He testified

he had experience doing appraisals of commercial and agricultural land.    Based on

these two appraisals offered by Trustee, the entire Cambridge property, including

the house, outbuilding, and farmland, has a total value of $610,000.

Iowa State Bank presented an appraisal by Brent Kimble, a certified senior

residential appraiser.   He values the home and surrounding five acres at $560,000

as of April 23, 2010.   Mr. Kimble performed an additional appraisal on the

property, dated December 8, 2011, at the request of Debtors.   See Trustee Ex. 57.

He was asked to determine the market value of the property for Debtors.   Trustee

Ex. 57, p. 3.   In this second appraisal, he valued the home and five surrounding

acres at $450,000.

Debtors presented a market analysis by Mark Greenfield, a realtor with

Re/Max.   He values the property at $450,000.   He noted $50,000 to $60,000 of

work would be required to get financing for a purchase.   He also noted the fee to

sell the property would be $31,500.   He concluded this would leave net proceeds to

Debtors of approximately $360,000.   This analysis covers the entire property,

including the house, outbuilding, and all 34.75 acres.   The parties point out that Mr.

Greenfield is not a certified appraiser, but performs market analyses for property

owners when they intend to sell property.   The Court noted at the hearing that

generally an appraisal by a certified appraiser is more persuasive than a market

analysis by a real estate broker.

6

The following summarizes the evidence regarding value, in no particular order:

| Party/Exhibit | Portion of Property | Date | Value |
|---|---|---|---|
| Trustee Ex. 55 | Home, outbuilding + 5 acres | 8/11 | $425,000 |
| | 29.75 acres of farmland | 8/11 | $185,000 |
| | Only the outbuilding | 8/11 | $ 30,000 |
| | Entire property | 8/11 | $610,000 |
| Debtors Ex. L | Entire property | 2/12 | $450,000 |
| Trustee Ex. 57 | Home + 5 acres | 12/11 | $450,000 |
| Bank Ex. 27 | Home + 5 acres | 4/10 | $560,000 |
| Debtors' costs | Entire property | 2009 | $500,000 |

The parties also presented testimony about the nature and use of the outbuilding on the Cambridge property and the skid loader Debtors own.   Debtor has worked for Caruth Construction since at least 2009, and before that for TLP Construction which was in business from August 2006 to December 2008.   Mr. Pickard testified he continues to use the outbuilding on his property as a shop for his personal use, but no longer uses it for business purposes.   He asserts the skid loader is difficult to start and keep running.   He uses it to clean waterway edges on the farm ground every year after harvest, but no longer uses it for other business

7

purposes.   Previously, Mr. Pickard used the skid loader in his construction business. He also took the skid loader to his job with Caruth in the past, but no longer does so because his employer purchased its own skid loaders.

Sometime after the sale of the Ankeny property in October 2008, the Bank learned of that sale and that its mortgage on the property was not satisfied by the sale proceeds.   The Bank continued to demand payment and assert its lien.   Debtors attempted to settle the matter with the Bank by offering less than the amount due or offering a mortgage on the parcel adjacent to the Ankeny home.   The Bank did not accept Debtors' offers for less than the full amount due on the note, which it considered to be fully secured by real estate.

The Bank started a foreclosure action against the Ankeny property in May 2010—claiming its lien still attached to that property.   It also filed an action against Debtors and TLP, requesting a money judgment on the debt and a declaratory judgment that the Cambridge property was not exempt from the debt secured by the Ankeny property.   In the foreclosure action, the court granted the Bank judgment against Debtors, which was partially satisfied by proceeds of the $45,000 sale of concrete forms which were also collateral for the debt.   The Bank's proof of claim number 6, filed January 3, 2012, states the amount of the debt is $113,943.05 and the claim is secured by real estate.

8

In the other case the Bank brought against Debtors, the Iowa District Court denied the Bank's request for declaratory judgment.   It held that the Cambridge property was exempt as Debtors' homestead because it was acquired with the proceeds of the prior Ankeny homestead.   Debtors' Ex. M.   The Bank has appealed that decision to the Iowa Supreme Court.   Debtors' August 3, 2011 Chapter 7 petition stayed both the appeal and the foreclosure action pending against the Ankeny property.

The following summarizes evidence in the record regarding relevant dates:

<u>Timeline</u>

| | |
|---|---|
| 1996 | Debtors acquire Ankeny homestead |
| Aug. 25, 2006 | Debtors grant the Bank a mortgage on Ankeny property to secure business debt of TLP Properties/TLP Construction |
| Aug. 1, 2007 | Debtors acquire Cambridge property |
| Oct. 31, 2008 | Debtors sell Ankeny residence for $455,000; net proceeds equal $324,000; the Bank is not paid $134,400 mortgage balance.   Debtors use $151,000 of sale proceeds to pay off the Bank's mortgage on Cambridge property. |
| Nov. 1, 2008 | Mr. Pickard starts residing at Cambridge Property |
| Dec. 2008 | TLP Construction goes out of business |
| Nov. 2009 | Debtors' family completely moves to Cambridge property |

| | |
|---|---|
| Nov. 9, 2009 | Debtors sell parcel adjacent to Ankeny homestead for $135,000 |
| May 2010 | Bank starts foreclosure action against Ankeny property |
| Oct. 2010 | Bank starts action against Debtors and TLP in Story County; the court denies the Bank's request for declaratory judgment that Cambridge property is not exempt from the debt secured by Ankeny property (on appeal to Iowa Supreme Court); judgment of $128,764 plus $19,480 interest against Debtors partially satisfied by proceeds of sale of concrete forms for $45,000. |
| Aug. 3, 2011 | Chapter 7 petition filed, staying both of the Bank's actions |
| Jan. 3, 2012 | Bank's proof of claim asserts secured claim of $113,943.05 |

## THE ARGUMENTS

The Bank argues that the Cambridge property is not exempt as a homestead from the Bank's debt which arose before Debtors' acquisition of the property.   The Bank also contends its lien followed the homestead proceeds into the new homestead.   In addition, the Bank argues that, at most, the Cambridge property is only exempt as a homestead to the extent of the net proceeds of the sale of the Ankeny property after the Bank's lien was subtracted.   The Bank contends the Cambridge property is worth substantially more than that and that its claim and/or lien would reach that additional amount.   United Fire agrees with this analysis and further argues that the Bank has an equitable lien or constructive trust on the

Cambridge property.    United Fire argues such lien or trust results from Debtors'

failure to satisfy the Bank's mortgage on the Ankeny property when it was sold.

Trustee adopts the Bank's arguments regarding Debtors' assertion of the

Cambridge property as their exempt homestead.    In addition, Trustee asserts the

shop outbuilding on the Cambridge property is either not exempt or only exempt to a

value of $300 under Iowa law.    Trustee also argues the skid loader is not exempt as

a tool of the trade because neither Debtor has a business pursuit in which the

property is used for a business purpose.

Debtors assert this Court has no jurisdiction to hear this case under the

Rooker-Feldman doctrine.    Debtors assert that any action by this Court would be

the type of review of a state court decision by a federal court that the doctrine

prohibits.

On the merits, Debtors assert the Cambridge property—including the shop

building—is fully exempt as their homestead.    Debtors claim their skid loader is

exempt as a tool of the trade because it is used for farming activities and previously

used it in Mr. Pickard's construction business.    Debtors argue the objecting parties

have not met their burden to show their exemptions are not properly claimed.

Debtors also object to the Bank's proof of claim to the extent it claims a lien on real

estate.    They claim the Bank released its lien on the Ankeny property.    They also

11

assert that they paid off the Bank's only remaining lien on the Cambridge property,

leaving the Bank entirely unsecured.

## CONCLUSIONS OF LAW

Under Iowa Code § 627.10, a debtor in Iowa may only claim Iowa

exemptions.    In re Estate of Tolson, 690 N.W.2d 680, 682 (Iowa 2005); See also In

re Roberts, 443 B.R. 531, 536-37 (Bankr. N.D. Iowa 2010).    "It is well settled that

the Court must construe Iowa exemption statutes liberally" in favor of the

beneficiaries of the legislation.    Tolson, 690 N.W.2d at 682; Millsap v. Faulkes, 20

N.W.2d 40, 42 (1945).    The homestead right in Iowa is peculiarly favored.

Gustafson v. Fogleman, 551 N.W.2d 312, 314 (Iowa 1996); see also Roberts, 443

B.R. at 537.    The parties objecting to a debtor's claim of exemptions have the

burden of proving they are not properly claimed.    Tolson, 690 N.W.2d at 682; In re

Stenzel, 301 F.3d 945, 948 (8th Cir. 2002); Fed. R. Bankr. P. 4003(c).

## 1.    HOMESTEAD EXEMPTION

Iowa Code § 561.16 exempts homesteads from judicial sale.

The Iowa homestead exemption has been broadly interpreted with a
focus on its protective purpose. As this Court [has] noted . . . :
> In this state, homestead statutes are broadly and liberally
> construed in favor of exemption. Regard should be had to
> the spirit of the law rather than its strict letter. The
> homestead exemption is not for the benefit of the husband
> or wife alone, but for the family of which they are a part.

> The policy of our law is to jealously safeguard homestead
> rights.
>
> In re Meyer, 392 B.R. 416, 419 (quoting In re Matter of Bly, 456
> N.W.2d 195, 199 (Iowa 1990)). "The purpose of homestead laws is to
> promote the stability and welfare of the state by encouraging property
> ownership and independence on the part of the citizen ...". Id. (cited and
> quoted sources omitted). The Iowa homestead exemption is to be
> interpreted "to secure the benevolent purposes of the homestead laws
> and to be construed broadly and liberally in favor of the beneficiaries of
> the legislation." Id. (quoting In re Estate of Tolson, 690 N.W.2d 680,
> 682 (Iowa 2005)). With those principles in mind, the Court turns to the
> specific questions presented here.

Roberts, 443 B.R. at 537.

The Bank, United Fire, and the Trustee all make similar arguments about how

the Bank's lien should attach to the homestead and/or reduce the value of the

homestead exemption.   The arguments all address the same basic point—Debtors

should **not** be able to claim a homestead exemption without accounting for the lien

the Bank either never released or never intended to release.   Because the Court

concludes that, at a minimum, that it will impose a constructive trust or equitable

lien in favor of the Bank on Debtors' Cambridge property, it need not address the

other issues relating to the homestead exemption and its effect on the Bank's lien.

Thus, the Court will not address the pre-acquisition debt arguments or those relating

to valuation of the homestead.   The constructive trust or equitable lien puts the

Bank in the same—or better—position than the arguments under the other theories.

The constructive trust or equitable lien allows the Bank's claim to be treated as fully

secured and attaching to the homestead.    The majority of Debtor's homestead

amendment claim will not be effected by this result.

### A.    Constructive Trust or Equitable Lien on the Homestead

Property rights in bankruptcy depend on state law.    Butner v. United States,

440 U.S. 48, 54 (1979).    A constructive trust is an equitable remedy imposed by

Iowa courts to prevent unjust enrichment.    Slocum v. Hammond, 346 N.W.2d 485,

493 (Iowa 1984).    It is defined "as a remedial device by which the holder of legal

title is held to be a trustee for the benefit of another who in good conscience is

entitled to the beneficial interest."    Id. (quoting Loschen v. Clark, 127 N.W.2d 600,

603 (Iowa 1964)).

> The imposition of a constructive trust on a bankruptcy debtor's property
> would give the beneficiary, or true owner, an equitable interest in the
> property superior to the interest of the debtor or the trustee in
> bankruptcy.

In re Rohde, 400 B.R. 230, 236 (Bankr. N.D. Iowa 2009) (citing In re N.S. Garrott &

Sons, 772 F.2d 462, 467 (8th Cir. 1985); 11 U.S.C. § 541(d)).    The party seeking

the remedy of constructive trusts must establish the right by clear, convincing, and

satisfactory evidence.    Benson v. Richardson, 537 N.W.2d 748, 760 (Iowa 1995).

> Constructive trusts fall into three categories: (1) those arising from
> actual fraud; (2) those arising from constructive fraud (appropriation of

14

> property by fiduciaries or others in confidential relationships); and (3)
> those based on equitable principles other than fraud.

Slocum, 346 N.W.2d at 493.   Thus, a constructive trust may be an appropriate

remedy against unjust enrichment whether tainted by fraud or not.   Regal Ins. Co. v.

Summit Guar. Corp., 324 N.W.2d 697, 705 (Iowa 1982).   Circumstances other than

fraud justifying imposition of a constructive trust include:

> bad faith, duress, coercion, undue influence, abuse of confidence, or
> any form of unconscionable conduct or questionable means by which
> one obtains the legal right to property which they should not in equity
> and good conscience hold.

Berger v. Cas' Feed Store, Inc., 577 N.W.2d 631, 632 (Iowa 1988).

To establish the trust, "it is necessary that there be a res or specific fund on

which the trust may be fixed."   Rohde, 400 B.R. at 236 (quoting Homolka v.

Drahos, 74 N.W.2d 589, 591 (1956)).   The party in whose favor a constructive trust

is established may trace the property to where it is held.   Cox v. Waudby, 433

N.W.2d 716, 718 (Iowa 1988).   "The homestead nature of property does not shield

it from the right of a constructive trustee to trace proceeds of the trust property."   Id.

An equitable lien is an alternative to a constructive trust.   Nachazel v. Mira

Co., Mfg., 466 N.W.2d 248, 253 (Iowa 1991).   It is a restitution concept applied to

avoid injustice "out of general considerations of a right and justice as applied to the

relations of the parties and the circumstances of their dealings."   Id. (citing Tubbs v.

15

United Central Bank, 451 N.W.2d 177, 185 (Iowa 1990), and Farmers & Merch.
Bank v. Commissioner of Internal Revenue, 175 F.2d 846, 849 (8th Cir. 1949)); In
re Shulista, 451 B.R. 867, 883 (Bankr. N.D. Iowa 2011) (recognizing the concept of
equitable liens may cover many varying factual situations).   The term equitable lien
is defined as "a right not recognized at law, to have a fund or a specific property, or
its proceeds, applied in whole or in part to the payment of a particular debt."   Smith
v. Village Enters., Inc., 208 N.W.2d 35, 38 (Iowa 1973) (quoting 51 Am. Jur. 2d
Liens § 22 (1970)).   Equitable liens may attach to real estate if the claimant meets
the essential elements of "a debt, duty, or obligation owing by one person to another,
and a res to which that obligation fastens."   Federal Land Bank v. Boese, 373
N.W.2d 118, 121 (Iowa 1985).

Based on the foregoing, the Court concludes Iowa State Bank is entitled to an
equitable lien on the Cambridge property.   Debtors owe the Bank a debt arising
from the note secured by the mortgage on their Ankeny property.   Through either
mistake or misadventure, the debt was not paid when Debtors sold the Ankeny
property.   Under the record presented, it is apparent the proceeds of the sale are
directly traceable to the Cambridge property.   In these circumstances, equity
recognizes a lien on the Cambridge property to satisfy the Bank's mortgage on the
Ankeny property.

16

Arguably, the Bank is also entitled to a constructive trust even assuming, without deciding, no fraud existed in the sale of the Ankeny property.   The record makes clear that the Bank was entitled to have its claim satisfied from the proceeds of the sale of the Ankeny property.   Instead, Debtors received the entire proceeds without satisfying the Bank's lien.   The record is clear and the Court is satisfied that the Bank, to avoid unjust enrichment, is entitled to a constructive trust on the Cambridge property into which Debtors invested the proceeds of the sale of the Ankeny property.

The constructive trust or equitable lien equals the amount of the remaining debt that was secured by the Ankeny mortgage.   That debt was reduced by the sale of other collateral.   According to the Bank's proof of claim, the current amount of the debt is $113,943.05.   That amount attaches to Debtor's homestead as a lien.   In reaching this conclusion, the Court also overrules Debtors' objection to the Bank's proof of claim.

## 2.   HOMESTEAD APPURTENANCES

The homestead is defined in § 561.1 as "the house used as a home by the owner . . . with the building and other appurtenances thereon, habitually and in good faith used as part of the same homestead."   Iowa Code § 561.1(1).   Section 561.3 further states:   "It must not embrace . . . any other buildings except such as are

properly appurtenant thereto, but a shop or other building situated thereon, actually used and occupied by the owner in the prosecution of the owner's ordinary business, and not exceeding three hundred dollars in value, is appurtenant thereto." Iowa Code § 561.3. Iowa courts have long held that the homestead must be the place of the debtor's actual residence. Givans v. Dewey, 47 Iowa 414 (1877); In re Wipperling, 286 B.R. 106, 108 (Bankr. N.D. Iowa 2002).

The Iowa Supreme Court considered definitions of "appurtenance" in In re Sueppel's Estate, 124 N.W.2d 154, 156 (Iowa 1963). An appurtenance is something which is "incident to" another thing more worthy, and "necessarily connected with the use and enjoyment of the latter." Id. Noting the requirement in § 561.1 that appurtenances are "habitually and in good faith used as part of the same homestead," the court found that farm buildings are appurtenant to the use of a farm as a homestead. Id. at 157. The three hundred dollar valuation limitation in § 561.3 did not apply because the buildings "clearly" were used as part of the farm homestead, rather than by the owner in the prosecution of his ordinary business. Id. In contrast, a garage on a separate lot, and stables used in the business of hotel keeping, have been held not to be appurtenant to the homestead in Van Law v. Waud, 272 N.W. 523, 524–25 (Iowa 1937), and Cass County Bank v. Weber, 48 N.W. 1067, 1068 (Iowa 1891), respectively. See also In re Sadler, 327 B.R. 654,

18

657 (Bankr. N.D. Iowa 2005) (holding machine shed is exempt as appurtenant to the farm homestead).

Based on the record presented, the Court concludes that the shop building on the Cambridge property is not appurtenant to the homestead under § 561.3 and is not exempt.   The building was built to be used in Debtors' concrete construction business, which has since closed.   Although the shop is on Debtors' homestead real estate, it is not used as part of the homestead and is not the type of space which would normally qualify as a personal "shop" or work area for Debtors' use incident to the homestead.   The building has a sleeping area and toilet room which Debtor used while he was building the home.   This, however, does not undermine the fact that it is not and has not been used as a part of the homestead.   Had Debtor continued with his construction business, the building could be exempt up to $300 in value as being used in the prosecution of his ordinary business.   Based on the circumstances as they existed on the date Debtors filed their Chapter 7 petition, however, the building is neither used in Debtors' ordinary business nor properly appurtenant to the homestead and is not exempt.

## 3.   TOOLS OF THE TRADE

Debtors claim their skid loader exempt under Iowa Code § 627.6(11).   That section states:   "If the debtor is engaged in any profession or occupation other than

farming, [a debtor may hold exempt] the proper implements, professional books, or

tools of the trade of the debtor or a dependent of the debtor, not to exceed in value

ten thousand dollars in the aggregate."    The record shows that Debtor used the skid

loader for his concrete construction business.    He no longer runs that business but

continues in the trade as an employee.    It is apparent that, in the future, Debtor will

only use the skid loader to move dirt on his farm.    Section 627.6(11) gives an

exemption for tools of the trade of occupations "other than farming."    Trustee has

met his burden to prove exemption of the skid loader is not properly claimed.

Trustee's objection to exemption of the skid loader should, therefore, be granted.

## 4.    ROOKER-FELDMAN ARGUMENTS

Debtors have argued that this Court had no jurisdiction to decide this case

under the Rooker-Feldman doctrine.

> The Rooker-Feldman doctrine got its name from two cases that formed
> the rule—Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and
> District of Columbia Court of Appeals v. Feldman, 460 U.S. 462
> (1983).    "The doctrine has the same effect as the preclusion doctrines
> of res judicata and collateral estoppel, and is concerned with the finality
> of state court judgments."    Bakonyi v. Boardroom Info. Sys. (In re
> Quality Laser Works), 211 B.R. 936, 942 (B.A.P. 9th Cir. 1997).
> Under Rooker-Feldman, "'a party losing in state court is barred from
> seeking what in substance would be appellate review of the state
> judgment in a United States district court, based on the losing party's
> claim that the state judgment itself violates the loser's federal rights' . .
> . ."    Knutson v. City of Fargo, 600 F.3d 992, 995 (8th Cir. 2010)
> (quoting Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994)).    The

Eighth Circuit went on to note that cases decided since 1983 reminded
the court "of the narrow application of the rule, 'confined to . . . cases
brought by state-court losers complaining of injuries caused by
state-court judgments rendered before the [federal] district court
proceedings commenced and inviting district court review and
rejection of those judgments.'"  Id. (quoting Exxon Mobil Corp. v.
Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)).

In re Brincks, Involuntary No. 11-00371, slip op. at 26–27 (Bankr. N.D. Iowa, Jan.

30, 2012).   Debtors argued that because the State District Court had decided the

homestead issue, this Court's ability to decide the issue would mean this Court was

functionally reviewing the State Court decision in violation of Rooker-Feldman.

Debtors' argument misses one critical point.   The State Court decision was

on appeal when this case was filed.   The Eighth Circuit has concluded the

Rooker-Feldman doctrine does not apply in those circumstances.   Dornheim v.

Sholes, 430 F.3d 919, 923–24 (8th Cir. 2005).   The Eighth Circuit concluded the

doctrine applies only to state court proceedings that are final or completed.   Id.   It

held that a decision on appeal in the state court was not final for purposes of the

Rooker-Feldman analysis.   Id.   Applying Dornheim, this Court concludes there is

no Rooker-Feldman problem and this Court has jurisdiction to hear this case.

## SUMMARY

Iowa State Bank is entitled to a constructive trust or equitable lien on the

Cambridge property in the amount of the remaining debt as set out in the Bank's

21

proof of claim, number 6.    Debtors' objection to the Bank's proof of claim is,

therefore, denied.    The shop building at the Cambridge property is not exempt as

appurtenant to the homestead.    Debtors' skid loader is also not exempt as a tool of

the trade under Iowa Code § 627.6(11).

**WHEREFORE**, Objections to Exemptions (Docs. 12, 14, 17, 20) are

GRANTED IN PART and DENIED IN PART.

**FURTHER**, Debtors' Objection to Proof of Claim No. 6 (Doc. 37) is

DENIED.

**FURTHER**, Debtors' claim of exemption in the skid loader is DENIED.

**FURTHER**, Debtors' homestead exemption is DENIED as to the shop

building.

**FURTHER**, Iowa State Bank is entitled to a constructive trust or equitable

lien in the Cambridge Property.

**FURTHER**, Debtors' homestead exemption is otherwise properly claimed.

**FURTHER**, judgment shall enter accordingly.

Dated and Entered:  October 15, 2012

THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE

22